UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES DOE | CIVIL ACTION |
| VERSUS | NO: 20-1338 |
| ARCHDIOCESE OF NEW ORLEANS INDEMNITY, INC., et al. | SECTION: "J"(3) |

## ORDER & REASONS

Before the Court are a *Motion to Remand Action to State Court* filed by Plaintiff James Doe (**Rec. Doc. 9)** and a *Motion to Refer Matter to Bankruptcy Court* **(Rec. Doc. 13)** filed by Defendant, Roman Catholic Church of the Archdiocese of New Orleans ("Archdiocese"). Both motions are opposed.[1] The Court heard oral argument via video conference on July 29, 2020. (Rec. Doc. 31).[2] Having considered the motions, the parties' arguments, the record, and the applicable law, the Court finds that both motions should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND

This action is one of thirty-five similar cases filed by plaintiffs who allege they were sexually abused as children by clergy members working for the Archdiocese. The alleged abuse took place over a span of several decades, from the late 1960's into the 1990's. In 2018, the Archdiocese released a list of clergy members that had been

---

[1] Archdiocese Opp'n to Mot. to Remand, Rec. Doc. 21; Catholic Mut. Relief Soc'y of Am. Opp'n to Mot. to Remand, Rec. Doc. 22; Plaintiff's Reply in Supp. of Mot. to Remand, Rec. Doc. 22. Plaintiff's Opp'n to Mot. to Refer, Rec. Doc. 20; Archdiocese Reply in Supp. of Mot. to Refer, Rec. Doc. 30.

[2] After oral argument, Plaintiff and the Archdiocese submitted supplemental memoranda. (Rec. Docs. 32, 33).

1

credibly accused of engaging in sexual abuse of minors. The release of the list precipitated dozens of lawsuits against individual clergymen and the Archdiocese, as well as the Archdiocese's insurers. All of the lawsuits were filed in state court. The above-captioned suit was brought in Orleans Parish Civil District Court in February of 2019.

The state court litigation became mired in discovery disputes regarding the confidentiality of various documents produced by the Archdiocese. On May 1, 2020, before the discovery disputes could be resolved, the Archdiocese filed for Chapter 11 Bankruptcy. Upon the filing of bankruptcy, the Archdiocese removed the sex abuse cases to federal court on the grounds that they are "related to the bankruptcy." (Rec. Doc. 1).

When the Archdiocese filed for bankruptcy, no scheduling order had been entered and no trial date had been set by the state court in this case. Proceeding parallel to this case is the Archdiocese's Chapter 11 Bankruptcy, overseen by the Bankruptcy Judge. On July 3, 2020, the Official Committee of Unsecured Creditors filed a motion to dismiss the Chapter 11 case, essentially arguing that the bankruptcy is fraudulent, and the Archdiocese is merely attempting to forum shop and delay litigation. That motion to dismiss is currently set for submission before the Bankruptcy Court on August 20, 2020.

On July 7, 2020, roughly two months after removal, Plaintiff filed the instant Motion to Remand. The Archdiocese then filed its Motion to Refer.

## DISCUSSION

As explained below, the bedrock issue in this matter concerns weighing the factors that bear on permissive abstention and/or equitable remand. However, several antecedent issues must be addressed first. In the interest of brevity, the Court will do this in a somewhat abbreviated fashion. Accordingly, the Court largely assumes the reader's familiarity with the parties' arguments.

The Archdiocese's Motion to Refer is premised on Local Rule 83.4.1, which states:

> All cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11 are transferred by the district court to the bankruptcy judges of this district. As set forth in 28 U.S.C. 157(b)(5), personal injury tort and wrongful death claims must be tried in the district court.

Plaintiff responds by arguing the Court can and should withdraw the reference to the Bankruptcy Court.

A preliminary question exists as to whether the Court must first refer this matter to the Bankruptcy Court before it may decide whether to withdraw that reference. The Court concludes it is not required to do so. Fifth Circuit precedent indicates that a district court may "effectively withdraw" a case by simply acting in the case before it is referred. *See Carlton v. Baww, Inc.*, 751 F.2d 781, 788 (5th Cir. 1985); *see also Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1142 (4th Cir. 1990).[3]

---

[3] The Court further notes that it would be an inefficient use of judicial time and resources to first refer Plaintiff's Motion to the Bankruptcy Court only to immediately turn around and withdraw that reference.

The next question is whether the Court should "effectively withdraw" the reference. There are two types of withdrawal: mandatory and permissive. *See* 28 U.S.C. § 157(d). Plaintiff does not argue mandatory withdrawal applies; only permissive withdrawal is at issue. There must be "cause" to exercise permissive withdrawal. *Id.* Factors to consider include whether the matter is a core or non-core proceeding; whether the proceedings involve a jury demand; and whether withdrawal would further the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985). The Court finds that the balance of factors favors withdrawing the reference.[4] Consequently, the Court denies the Archdiocese's Motion to Refer.

The next issue is whether the Court has the power to decide a motion to remand while the bankruptcy automatic stay is in effect. The weight of authority holds that it does. *See Verges v. Verges*, No. 03-3533, 2004 WL 1375304, at *3 (E.D. La. June 17, 2004); *Turbine Powered Tech. LLC v. Crowe*, No. 19-cv-00475, 2019 WL

---

[4] Plaintiff's case is a non-core bankruptcy proceeding because it does not involve a substantive Title 11 right, nor is it a case that could only arise in the context of a bankruptcy. *See In re Southmark*, 163 F.3d 925, 930 (5th Cir.1999). It is also settled law that when a suit is based solely on state law and was filed pre-bankruptcy, as opposed to being in the form of a proof of claim filed in the bankruptcy itself, then the matter is a non-core proceeding. *See Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 783 (E.D. Tex. July 6, 2001). Plaintiff has demanded a jury trial, which bankruptcy courts in this district may not try. *See In re Babcock & Wilcox Co.*, No. 01-1187, 2001 WL 1018366, at *4 (E.D. La. July 2, 2001). Finally, regarding the Archdiocese's argument that judicial economy favors referring pretrial matters to the Bankruptcy Court, the Court notes that none of the cases cited by the Archdiocese involved a pending motion to remand. There is no reason the Court cannot rule on Plaintiff's Motion to Remand as a threshold matter, and, should the Court deny remand, later refer more routine issues to the Bankruptcy Court. *See, e.g.*, *Sonnier v. HESCO Bastion USA, LLC*, No. 12-00728, 2013 WL 5350853 (M.D. La. Sept. 23, 2013).

4054093, at *6 (W.D. La. Aug. 12, 2019) (Mag. Rep. & Rec.); *Sanders v. Farina* 67 F. Supp. 3d 727, 730 (E.D. Va. 2014) ("[B]ecause a remand is not an adjudication on the merits, it does not jeopardize or infringe on a debtor's 'breathing space' or threaten to deplete the estate against the interests of other creditors."). *But see Liljeberg Enter. Int'l., LLC v. Vista Hosp. of Baton Rouge, Inc.*, No. 04-2780, 2004 WL 2725965 (E.D. La. Nov. 24, 2004).

Moving to the question of whether the Court should remand Plaintiff's case, Plaintiff urges remand under mandatory abstention, *see* 28 U.S.C. § 1334(c)(2), or, alternatively, permissive abstention/equitable remand, *see id.* §§ 1334(c)(1), 1452(b). Mandatory abstention is only applicable when all of the following five elements are met: "(1) there was a 'timely motion of a party' for abstention; (2) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (3) the claim is a non-core proceeding; (4) an action has been commenced in state court; and (5) the action could be adjudicated timely in state court." *Cadle Co. v. Moore (In re Moore)*, 739 F.3d 724, 728-29 (5th Cir. 2014). The Court finds elements (2) and (5) are lacking.[5]

---

[5] Regarding subject matter jurisdiction, Plaintiff's Petition for Damages states that he is a citizen of Illinois and no Defendant is a citizen of Illinois. Based on the damages prayed for and the severity of the allegations, the amount in controversy does not seem to be an issue. Although several of the Defendants are from Louisiana, the forum-defendant rule is merely a procedural bar to removal, not to diversity jurisdiction under 1332(a). *See Tex. Brine Co. LLC v. Am. Arbitration Ass'n*, 955 F.3d 482, 485-86 (5th Cir. 2020). Thus, diversity provides an independent basis for federal jurisdiction.

Regarding whether Plaintiff's claims are capable of timely adjudication in state court, district courts usually require evidence "such as scheduling orders and a discovery plan" to prove the state court is ready to timely adjudicate claims. *J.T. Thorpe Co. v. American Motorists*, No. 02-4598, 2003 U.S. Dist. LEXIS 26016, at *14 (S.D. Tex. Jun. 6, 2003). Here, there is no scheduling order or trial date after more than a year of litigation, and at the time of removal the case was still mired in discovery disputes at the state court level. Furthermore, and perhaps most importantly, Plaintiff has not yet asked the Bankruptcy Court to lift the automatic stay. Thus, even if the case was remanded to state court, the case could not timely proceed.

This leaves Plaintiff's arguments regarding permissive abstention and/or equitable remand.[6] As other courts have noted, the factors governing permissive abstention and equitable remand are nearly identical. *See, e.g., Dubose v. Merchs. & Farmers Bank*, 318 F. Supp. 2d 419, 428 (S.D. Miss. 2003). Because the analysis is so similar, courts that grant remand often employ equitable remand found in 28 U.S.C. § 1452(b), which allows a court to remand "on any equitable ground" claims removed under § 1452(a). *Lea v. Johnson & Johnson*, No. 19-9716, 2019 WL 3335143, at *2 (E.D. La. July 24, 2019). This is a broad grant of authority. *Id.* A court may consider the following factors when deciding a motion for equitable remand:

(1) [t]he convenience of the forum;

(2) the presence of non-debtor parties;

(3) whether the case should be tried as a whole in state court;

(4) the duplicative and uneconomic effect of judicial resources in two forums;

(5) the lessened possibility of inconsistent results;

(6) whether the state court would be better able to handle issues of State law;

(7) the expertise of the Bankruptcy Court;

(8) the degree of relatedness or remoteness to the main bankruptcy case;

(9) prejudice to involuntarily removed parties;

(10) whether the case involves forum shopping;

---

Furthermore, numerous courts have read 28 U.S.C. § 157(b)(4) and 28 U.S.C. 157 § (b)(2)(B) in conjunction to bar the application of mandatory abstention to non-core personal injury claims. *See, e.g., Adelsflugel v. Consol. Aluminum Corp.*, No. 12-cv-811, 2014 WL 4181002, at *2, n.5 (M.D. La. Aug. 20, 2014).

[6] Some cases refer to "equitable remand" as "discretionary remand."

6

    (11) the burden on the Bankruptcy Court's docket; and

    (12) considerations of comity.

*Id.*

Not surprisingly, the parties vigorously dispute how the Court should weigh these factors. Plaintiff argues that the Bankruptcy Court's inability to adjudicate personal injury jury trials, the predominance of Louisiana state law issues, the presence of multiple non-debtors, the unrelatedness of Plaintiff's claims to the Archdiocese's Chapter 11 Bankruptcy, and the Archdiocese's alleged forum shopping all favor remand. The Archdiocese, on the other hand, contends that the Bankruptcy Court is willing and able to adjudicate the state law claims present in this case, the non-debtors will be prejudiced if the case is remanded to state court, this case is related to the main bankruptcy because the presence of the numerous sex abuse lawsuits was a primary driver in filing Chapter 11 Bankruptcy, and finally they were not forum shopping, but rather utilizing Chapter 11 Bankruptcy in the way Congress intended; i.e. to create a single forum to adjudicate and pay out claims against the estate.

The Court finds that both Plaintiff and the Archdiocese have equitable factors that favor their respective positions. Ultimately, though, the Court concludes that remand is inappropriate at this time, largely because the automatic stay has not been lifted. With the automatic stay still in effect, many of the equitable considerations Plaintiff cites in support of remand are less weighty than they would otherwise be. No discovery may proceed, no prescription hearings may be set, no state jury trial

may occur, and generally no comity concerns exist because the substantive claims against the Archdiocese are stayed, regardless of the forum.[7] Conversely, the Archdiocese's concerns about maintaining the numerous suits against it in one forum are equally valid whether the stay is in effect or not.[8] Accordingly, the Court denies Plaintiff's Motion to Remand.

---

[7] Plaintiff points out that the bankruptcy stay does not extend to non-debtors (e.g., Catholic Mutual Relief Society of America), which weighs in favor of granting remand. (*See* Rec. Doc. 32 at 8). Under the circumstances of this case, the Court finds persuasive Catholic Mutual's argument that allowing the state court to proceed solely against a non-debtor would be prejudicial to non-debtor and debtor alike:

> If this or any other individual sex abuse claim were remanded to state court, Catholic Mutual, a non-debtor direct action defendant that played no role in the factual allegations underpinning the claims, may have to defend these claims, while the case against the Archdiocese would be stayed by application of the automatic stay. This is, unto itself, unfair and prejudicial. [In footnote: As for the Archdiocese, any verdict entered against Catholic Mutual in a direct action in this case might be prejudicial to it in bankruptcy because other plaintiffs might seek to use the amount of any such verdict as a benchmark in asserting the value of their claims.] Catholic Mutual's case would be made more difficult, however, by the fact that nearly all of the documents and witnesses relevant to these claims would be under the control of the Archdiocese such that proceeding with discovery and on to trial would present all kinds of practical difficulties, including having to seek leave from the bankruptcy court to take such discovery. Further, as noted in footnote 9 supra, disparate coverage determinations by various state courts would prejudice Catholic Mutual.

 (*See* Rec. Doc. 22 at 13-14 & n.10).

[8] There does appear to be an obvious practical advantage to retaining jurisdiction over this case and others like it. The Archdiocese reports that at the time it filed its bankruptcy petition there were 70 known abuse claims against it, although only half of those had actually filed suit. (Rec. Doc. 33 at 3-4 & n.3). Based on the experience of other diocesan cases, it seems likely there will be many more claims filed during the bankruptcy period. (*Id.*). State procedure appears to offer no means of coordinating these multiple abuses cases for pretrial proceedings. This means that even purely legal issues must be decided separately in each individual case, often by different judges, leading to separate briefing, separate hearings, and separate (and potentially conflicting) decisions. In federal court, even if coordination is not achieved through the bankruptcy proceeding, it can be achieved through, for example, Fed. R. Civ. P. 42(a).

## CONCLUSION

For the above reasons,

**IT IS ORDERED** that the Archdiocese's *Motion to Refer Matter to Bankruptcy Court* **(Rec. Doc. 13)** is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion to Remand* **(Rec. Doc. 9)** is hereby **DENIED**.

New Orleans, Louisiana, this 11th day of August, 2020.

_____
United States District Judge